IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Copac, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CA. NO.: 7:11-cv-01392 |
| ) | |
| TransPerfect, Inc., ) | |
| ) | **MEMORANDUM OF LAW IN OPPOSITION** |
| ) | **TO DEFENDANT'S MOTION TO DISMISS** |
| ) | |
| Defendants. ) | |
| _____) | |

Defendant TransPerfect, Inc., has moved to dismiss Plaintiff's Second, Third, and Fourth Causes of Action in this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's Second, Third, and Fourth Causes of Action fail to state a claim upon which relief can be granted.  Plaintiff Copac, Inc. (hereinafter "Copac"), respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss.

## **FACTS**

On or about April 28, 2010, Copac entered into a contract with Defendant wherein Defendant agreed to provide English to Spanish translations for the following phrases: "Men's Textured Crew"; "Men's Fashion Crew"; "Textured Crew"; "Fashion Crew"; and "of domestic and imported yarns."  Copac agreed to pay Defendant $142.50 for the translations of these phrases.  TransPerfect then breached the contract entered into by the parties by providing Copac with inaccurate translations regarding four of the five terms/phrases.

TransPerfect added the word "t-shirts" to four of the five translations without authorization from Copac, resulting in inaccurate translations of said phrases.  As a result of the translation errors made by Defendant, corrective cover-up labels had to be manufactured for all

1

of the paperboard packaging that was produced using the incorrect translations of Defendant. The corrective cover-up labels then had to be applied by hand to each of the thousands of paperboard packages that contained the incorrect translations.

Defendant actively solicited Copac prior to the contract at issue in this litigation and stated to Copac as follows, **"you can be confident that TransPerfect's certified quality management system will meet your translation needs for over 100 languages, no matter how demanding the deadline."** Compl. ¶ 6. Defendant also markets itself as "the nation's leading provider of translation services." Compl. ¶ 4. Copac has asserted the following causes of action against Defendant: (1) breach of contract; (2) bad faith; (3) negligence and negligent misrepresentation; and (4) unfair trade practices in violation of the South Carolina Unfair Trade Practices Act (hereinafter "SCUTPA"), S.C. Code Ann. § 39-5-10 et eq.

## STANDARD OF REVIEW

When reviewing a motion to dismiss, the Court must accept all well-pled facts in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Nemet Chevrolet, LTD. v. Consummeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Trulock v. Freech*, 275 F.3d 302, 307 (4th Cir. 2001) and *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). To avoid dismissal, the "complaint must contain sufficient factual matter…[that when]…accepted as true…state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1958 (2007)). To be facially plausible, a complaint must contain factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nemet Chevrolet, LTD.*, 591 F.3d at 256 (citing *Iqbal*, 129 S.Ct. at 1952).

2

However, this plausibility standard does not necessitate the plaintiff make a showing of the probability of success on the claim asserted. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965). **The question to be answered is whether in a light most favorable to the plaintiff, and with every doubt resolved in plaintiff's behalf, the Complaint states any valid claim for relief.** *Washington v. Lexington County Jail*, 337 S.C. 400, 404, 523 S.E.2d 204, 206 (Ct.App. 1999).

Plaintiff's Complaint sets forth plausible claims for bad faith, negligence, and unfair trade practice violations. Accordingly, Defendant's Motion to Dismiss Complaint should be denied.

## ARGUMENT

**I.     Plaintiff's claims for negligence and negligent misrepresentation should not be dismissed.**

To recover for negligent misrepresentation, a party must establish, "'(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.'" *Tom Hughes Marine, Inc. v. American Honda Motor Co.*, Inc., 219 F.3d 321, 324 (4th Cir. 2000) (internal citation omitted). Under South Carolina law, "[i]n most instances, a negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty will support a tort action." *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 55, 463 S.E.2d 85, 88 (1995) (internal citations omitted).

3

In the instant case, Defendant used false and deceptive marketing **pre-contract**, to induce Copac to use the services offered by Defendant. Defendant represented in a letter to the CEO of Copac, dated December 29, 2010, that stated, "Simply put, you can be confident that TransPerfect's certified quality management system will meet your translation needs for over 100 languages, no matter how demanding the deadline." Defendant, pre-contract, engaged in false and deceptive marketing to induce Copac to enter into the contract with Defendant.

Part of exercising due care when offering translation services is verifying that any words added to a requested translation are accurate, correct, and meet the approval of the client. Making assumptions in the translation industry, as Defendant did in this case, falls below the standard of care governing Defendant's business practices and falls below the quality control standards of Defendant that Defendant's marketing letter to Copac pre-contract ensured that Defendant would follow.

As to the claim for negligent misrepresentation, Copac requested the translation of five phrases. Defendant undertook to provide accurate translations for Copac. However, the translations presented to Copac were inaccurate, incorrect, and not what Copac had requested. Defendant made erroneous assumptions as to an additional term that was added to Copac's requested translations instead of calling/emailing Copac to confirm Defendant translated the terms/phrases accurately.

Copac's claim for negligent misrepresentation satisfies all elements of the negligent misrepresentation cause of action. First, Defendant made false representations when it was soliciting/marketing to Copac pre-contract to induce Copac to enter into the contract by representing that the translations would be provided by Defendant accurately "no matter how demanding the deadline". Second, Defendant had a financial interest in making the

false/deceptive marketing representations/solicitations to Copac because Defendant is in the business of translation services.  Third, the Defendant undertook and did owe a duty of due care to communicate truthful information to Copac because Copac was a perspective customer of Defendant when the representations were made by Defendant.  Fourth, Defendant breached this duty by providing Copac with incorrect and inaccurate translation services.  Fifth, it was justifiable for Copac to rely upon the false/deceptive marketing/solicitation representations of Defendant, a company in the business of translation services.  Finally, Copac suffered a pecuniary loss because Copac relied on Defendant's false/deceptive marketing representations and was induced to enter into the contract at issue due to the false/deceptive marketing representations of Defendant.

## II.     Plaintiff's claim for unfair trade practices in violation of SCUTPA should not be dismissed.

Copac's fourth cause of action seeks recovery for Defendant's violations of the South Carolina Unfair Trade Practices Act.  "To maintain a private cause of action under SCUTPA, a plaintiff must establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.  *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 579 (D.S.C. 2003) (internal citations omitted).  "An impact on the public interest may be shown if the acts or practices have the potential for repetition . . . The potential for repetition may be proven by showing  . . . the defendant's procedures created a potential for repetition of the unfair and deceptive acts."  *Hollman v. Woolfson*, 384, S.C. 571, 579, 683 S.E.2d 495, 499 (2009).

In this case, Defendant engaged in false/deceptive marketing to induce Plaintiff to enter into the translation services contract with Defendant as outlined hereinabove.  In reality, what

Copac received from Plaintiff was an inaccurate and incorrect translations of four out of five requested terms/phrases. Copac suffered both actual and ascertainable damages as a result. As previously stated, Defendant wrote in a letter to Copac, **"[s]imply put, you can be confident that TransPerfect's certified quality management system will meet your translation needs for over 100 languages, no matter how demanding the deadline."**

Defendant then provided Copac incorrect translations without asking or confirming whether Copac wanted the translations to reference t-shirts or socks. As a result, Copac sustained both actual and ascertainable damages as Copac was forced to print corrective labels for the packages printed with the incorrect translations and then place the labels on the thousands of packages by hand.

As to the third element, the requirement of an adverse impact on public interest, it is clear from Defendant's false/deceptive marketing techniques that these unfair and deceptive acts are capable of repetition in that Defendant is still engaged in providing translation services within the state of South Carolina.

For the foregoing reasons, Copac's unfair trade practices claim should not be dismissed.

### III.     Plaintiff's claim for bad faith should not be dismissed.

The South Carolina Supreme Court in, *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S.C. 360, 366-367, 147 S.E.2d 481, 483 (1966), held:

> Although implied covenants are not favored in the law, Nelson's reliance is upon the settled principles that non-contradictory terms may be implied in a contract in order to effectuate the manifest intention of the parties when the circumstances warrant it, and that there exists in every contract an implied covenant of good faith and fair dealing. 17A

*C.J.S. Contracts* s 328; 17 *Am.Jur.2d Contracts*, Sec. 255, 256; 4 *Williston on Contracts*, 3d ed., Sec. 610B; 5 Id., Sec. 670.

The Court quotes from 17A *C.J.S. Contracts* s 328, pages 282-284:

'A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used and external facts, such as the surrounding circumstances; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face.

'In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made.'

And from 17 *Am.Jur.2d Contracts*, Sec. 255, pages 649-650:

'The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as onest, fair, and just men they ought to have made. '

'It has been said that implied promises always exist where the covenant on one side involves some corresponding obligation on the other; where, by the relationships of the parties and the subject matter of the contract, a duty is owing by one not expressly bound by the contract to the other party in reference to the subject thereof. '

Based upon the Defendant's performance or lack thereof under the contract at issue and the false/deceptive marketing that Plaintiff engaged in to solicit Plaintiff to enter the contract at issue, Plaintiff's claim for bad faith should not be dismissed.

## **CONCLUSION**

Overwhelming authority supports this Court denying Defendant's Motion to Dismiss in its entirety. Defendant has clearly not met its heavy burden with regard to its Motion to Dismiss. For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss Plaintiff's Second, Third, and Fourth Causes of Action.

                                                THE WARD LAW FIRM, P.A.
                                                Attorneys for Plaintiff

                                                s/John E. Rogers, II_____
                                                John E. Rogers, II, Federal ID #: 10,014
                                                P.O. Box 5663
                                                233 S. Pine Street
                                                Spartanburg, SC 29304
                                                864-591-2366
                                                864-585-3090 (fax)
                                                Email: jrogers@wardfirm.com

July 5, 2011